IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 15 |
| Angiotech Pharmaceuticals, Inc., et al.,[1] | Case No. 11-10269 (___) |
| | Joint Administration Pending |
| Debtors in a Foreign Proceeding. | |

**MOTION FOR PROVISIONAL AND FINAL RELIEF IN AID OF CANADIAN PROCEEDING PURSUANT TO SECTIONS 105(A), 1517, 1519, 1520, AND 1521 OF THE BANKRUPTCY CODE**

Alvarez & Marsal Canada Inc., in its capacity as the court-appointed monitor and authorized foreign representative (the "**Monitor**") of the above-captioned debtors (collectively, the "**Debtors**") in a proceeding (the "**Canadian Proceeding**") under *Canada's Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**"), pending before the Supreme Court of British Columbia (the "**Canadian Court**"), respectfully submits this motion (this "**Motion**"), pursuant to sections 105(a), 1517, 1519, 1520, and 1521 of title 11 of the United States Code (the "**Bankruptcy Code**"), for: (a) entry of a provisional order (the "**Provisional Relief Order**") applying sections 362 and 365(e) of the Bankruptcy Code in these chapter 15 cases on an interim basis, pursuant to sections 1519(a)(3), 1521(a)(7), and 105(a) of

1 The last four digits of the United States Tax Identification Number or Canadian Business Number of the Debtors, as applicable, follow in parentheses: (i) 0741693 B.C. Ltd. (1270); (ii) Afmedica, Inc. (3293); (iii) American Medical Instruments Holdings, Inc. (1114); (iv) Angiotech America, Inc. (4001); (v) Angiotech BioCoatings Corp. (8560); (vi) Angiotech Delaware, Inc. (6401); (vii) Angiotech Florida Holdings, Inc. (9389); (viii) Angiotech International Holdings, Corp. (2274); (ix) Angiotech Pharmaceuticals, Inc. (6269); (x) Angiotech Pharmaceuticals (US), Inc. (9490); (xi) B.G. Sulzle, Inc. (4551); (xii) Manan Medical Products, Inc. (3265); (xiii) Medical Device Technologies, Inc. (3996); (xiv) NeuColl, Inc. (8863); (xv) Quill Medical, Inc. (7914); (xvi) Surgical Specialties Corporation (9848); and (xvii) Surgical Specialties Puerto Rico, Inc. (3379). The Debtors' executive headquarters' addresses are 1618 Station Street, Vancouver, BC A1 V6A 1B6, Canada, and 1633 Westlake Avenue North, Suite 400, Seattle Washington 98109.

the Bankruptcy Code; (b) entry of a final order (the "**Recognition Order**") after notice and a hearing (i) granting the petitions in these cases and recognizing the Canadian Proceeding as a foreign main proceeding under section 1517 of the Bankruptcy Code, (ii) giving full force and effect in the United States to the Initial Order, including any extensions or amendments thereof authorized by the Canadian Court, and (iii) granting the agent and lenders under the Debtors' postpetition financing facility certain protections afforded by the Bankruptcy Code; and (c) granting such other and further relief as this Court deems just and proper. In support of this Motion, the Monitor relies upon the *Declaration of Todd Martin In Support of: (I) Verified Petitions Under Chapter 15; (II) Motion for Joint Administration; (III) Motion for Provisional and Final Relief In Aid of Canadian Proceeding*; *and (IV) Motion to Establish Certain Notice Procedures in Connection with Filing of Verified Petitions Under Chapter 15* (the "**Martin Declaration**"), filed contemporaneously herewith, the affidavit of K. Thomas Bailey, an officer of the Debtors, submitted to the Canadian Court in support of the Initial Order, a copy of which is attached to the Martin Declaration as Exhibit B (the "**Bailey Affidavit**" and together with the Martin Declaration, the "**First Day Declarations**"), and the *Memorandum of Law in Support of: (I) Verified Petitions Under Chapter 15; and (II) Motion for Provisional and Final Relief In Aid of Canadian Proceeding* (the "**Memorandum of Law**"), filed contemporaneously herewith, and each of which is incorporated herein by reference. In further support of the relief requested herein, the Monitor respectfully represents as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

The statutory predicates for the relief requested herein are sections 105(a), 362, 364, 1517, 1519, 1520, and 1521 of the Bankruptcy Code.

2. The Debtors' business in the U.S is conducted principally through entities organized under Delaware law. The location of their primary U.S. asset, stock in holding and operating companies is located in Delaware. See Del. Gen. Corp. Law § 169, which provides: "For all purposes of title, action, attachment, garnishment and jurisdiction of all courts held in this State, but not for the purpose of taxation, the situs of the ownership of the capital stock of all corporations existing under the laws of this State, whether organized under this chapter or otherwise, shall be regarded as in this State." Accordingly, venue is proper in this Court and this District pursuant 28 U.S.C. § 1410(1).

## BACKGROUND

3. On January 28, 2011, the Debtors commenced the Canadian Proceeding, and the Canadian Court entered an Order, pursuant to the CCAA, providing various forms of relief thereunder (the "**Initial Order**"). The Canadian Proceeding represents the culmination of a six-month long process in which the Debtors, advised by Blackstone Advisory Services, L.P., Osler, Hoskin & Harcourt LLP and Willkie Farr & Gallagher LLP (collectively, the "**Restructuring Advisors**"), reached a compromise with 84% of the holders under the Subordinated Note Indenture and 53% of the holders under the Floating Rate Note Indenture (each as defined in the Bailey Affidavit), and entered into recapitalization support agreements with such creditors. Additionally, with the assistance of the Restructuring Advisors, the Debtors have reached a settlement of litigation regarding disputed liabilities arising under the Merger Agreement, by and among Angiotech Pharmaceuticals, Inc., Angiotech Pharmaceuticals (US),

Inc., Quaich Acquisition, Inc., and Quill Medical Inc., dated May 25, 2006 (the "**Quill Merger Agreement**").

4. On the date hereof (the "**Petition Date**"), the Monitor commenced these proceedings by filing petitions (collectively, the "**Chapter 15 Petitions**") on behalf of the Debtors, pursuant to sections 1504 and 1515 of the Bankruptcy Code, to seek recognition by this Court of the Canadian Proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code (the "**Chapter 15 Cases**").

5. Additional information about the Debtors' business and operations, the events leading up to the Petition Date, and the facts and circumstances surrounding the Canadian Proceeding and the Chapter 15 Cases are set forth in the First Day Declarations.

## RELIEF REQUESTED

6. By this Motion, the Monitor seeks: (a) entry of the Provisional Relief Order, substantially in the form attached hereto as Exhibit B, on an interim basis, applying sections 362 and 365(e) of the Bankruptcy Code to the Chapter 15 Cases pursuant to sections 1519(a)(3), 1521(a)(7), and 105(a) of the Bankruptcy Code until such time that this Court enters the Recognition Order;[2] (b) after notice and hearing, entry of the Recognition Order, substantially in the form attached hereto as Exhibit C, (i) granting the Petitions and recognizing the Canadian Proceeding as a foreign main proceeding under section 1517 of the Bankruptcy Code, (ii) giving full force and effect in the United States to the Initial Order, including any

[2] In order to ensure that the relief granted in respect of this Motion is consistent with the Initial Order, the Monitor requests that any stay relief provided by this Court not limit, abridge, or otherwise effect (a) the rights afforded the agent and other lenders under (i) the Draft DIP Credit Agreement (as defined below), (ii) the DIP Credit Agreement (as defined below), and/or (iii) the Wells Fargo Credit Agreement (as defined in the Initial Order) pursuant to paragraphs 48(b) and (c) of the Initial Order; (b) the Debtors' authorization under paragraph 13(a) of the Initial Order to make all such payments as may be or may become due and owing under the Wells Fargo Credit Agreement as required pursuant to the terms of the Definitive Documents and contemplated by the Cash Flow Budget (each as defined in the Initial Order); and (c) the Debtors' authorization to make certain payments as permitted in the Initial Order and subject to the terms and conditions set forth therein.

extensions or amendments thereof approved by the Canadian Court, and (iii) granting the DIP Lender (as defined below) certain protections afforded by the Bankruptcy Code; and (c) such other and further relief as this Court deems just and proper.

## BASIS FOR RELIEF

7. The Monitor filed the Chapter 15 Petitions to obtain recognition of the Canadian Proceeding as a "foreign main proceeding" under section 1517 of the Bankruptcy Code and to seek certain provisional relief related thereto from this Court in connection with the Canadian Proceeding. The Monitor and the Debtors' ultimate goal is to ensure an orderly administration of the Debtors' financial affairs and the recapitalization of the Debtors' capital structure under the auspices of the Canadian Proceeding, with the aid of this Court through the Chapter 15 Cases. The Monitor believes that entry of the Provisional Relief Order and Recognition Order will best assure (and may be the only way to ensure) such a result.

### A. Provisional Relief Is Authorized Under Section 1519(a) of the Bankruptcy Code

8. Section 1519(a) of the Bankruptcy Code provides, in pertinent part, that:

> From the time of filing a petition for recognition until the court rules on the petition, the court may, at the request of the foreign representative, where relief is urgently needed to protect the assets of the debtor or the interests of the creditors, grant relief of a provisional nature, including —
>
> (1) staying execution against the debtor's assets; [and]
>
> . . .
>
> (3) any relief referred to in paragraph (3), (4), or (7) of section 1521(a).

11 U.S.C. § 1519(a).

9. Section 1519(a)(3) of the Bankruptcy Code authorizes the Court to grant, on a provisional basis, any relief available under section 1521(a)(7). Section 1521(a)(7) in turn provides for the grant of any relief available to a trustee, subject to certain statutory exceptions

that are not applicable here. Accordingly, this Court has discretion to grant application of sections 362 and 365(e) on a provisional basis in order to preserve the estate during the pendency of the Chapter 15 Cases, prior to final disposition of the Chapter 15 Petitions.

10. Relief under section 1519 of the Bankruptcy Code is available where the foreign representative can satisfy the standard for injunctive relief. In the Third Circuit, the four factors considered for such standard are: "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." U.S. v. Bell, 414 F.3d 474, 478 n.4 (3d Cir. 2005) (citing ACLU of N.J. v. Black Horse Pike Reg'l Bd. Of Educ., 84 F.3d 1471, 1477 n. 2 (3d Cir. 1996) (en banc)). As discussed more fully in the accompanying Memorandum of Law, this standard is met here.

11. As set forth below and in the Memorandum of Law, recognition of the Chapter 15 Cases on a permanent is basis is proper, meaning the probability of successfully obtaining recognition of the Canadian Proceeding pursuant to chapter 15 is high. Further, unless the Provisional Relief Order is entered, the Debtors face the real possibility of immediate and irreparable harm from (i) individual creditors' collection and enforcement actions, (ii) the attempted termination of certain contracts as a result of the filing of the Chapter 15 Cases and the Canadian Proceeding, and (iii) prejudice that could result from decentralized administration of the Debtors' assets.

12. With respect to the potential for collection activity by creditors, a number of courts have recognized the need for provisional relief to prevent individual creditors from taking extrajudicial advantage of the recognition process. See Victrix S.S. Co., S.A. v. Salen

Dry Cargo, A.B., 825 F.2d 709, 713-14 (2d Cir. 1987) (harm to an estate exists where the orderly determination of claims and the fair distribution of assets are disrupted); In re Banco Nacional de Obras y Servicios Publicos, S.N.C., 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988). Further, as described more fully in the First Day Declarations, the Canadian Proceeding is intended to effectuate a compromise between the Debtors and the consenting majority of noteholders under the Subordinated Note Indenture[3] and the consenting majority of noteholders under the Floating Rate Note Indenture (each as defined in the Bailey Affidavit). Though a significant number of noteholders have evidenced their support for the Debtors' proposed restructuring, there is a minority of noteholders that have not agreed to the support agreements providing for the terms of the proposed recapitalization of the Debtors' capital structure through the Canadian Proceeding (the "**Non-Consenting Noteholders**"). Allowing creditors, and specifically the Non-Consenting Noteholders, to initiate piecemeal litigation against the Debtors in the United States would have a detrimental impact on the Debtors' ability to conduct business in the ordinary course, and would divert the Debtors' attention during a time when they should remain focused on their operations and restructuring efforts.[4]

13. Moreover, certain of the Debtors are party to agreements, including valuable license agreements and guarantees, that contain provisions allowing counterparties to terminate such agreements upon the filing of a bankruptcy or similar insolvency proceeding. Without the protections afforded by section 365(e) of the Bankruptcy Code, should such

---

[3] Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declarations.

[4] As stated above, the Debtors, with the assistance of the Restructuring Advisors, have settled the litigation and arbitration with respect to the Quill Merger Agreement. The Rex Arbitration (as defined in the Bailey Affidavit) is still pending. The Angiotech party to the Rex Agreement (as defined in the Bailey Affidavit) is Angiotech Pharmaceuticals (US), Inc., one of the Debtors. Angiotech Pharmaceutical (US), Inc. is also a guarantor under both the Subordinated Note Indenture and the Floating Rate Note Indenture, a borrower under the Debtors' prepetition secured credit facility, and a proposed borrower under the DIP Facility (as defined below).

contracts be terminated, the Debtors would lose important rights and benefits thereunder, to the detriment of the Debtors businesses and, in turn, their creditors. Thus, absent the relief requested, the Debtors and their creditors may suffer irreparable harm.

14. Further, entry of the Provisional Relief Order is also justified under the balance of hardships test. Absent this Court's entry of the Provisional Relief Order, the Debtors may be forced to needlessly expend their limited resources in defense of attachment and other similar collection actions by individual creditors, including the Non-Consenting Noteholders, and may need to exert efforts to replace terminated contracts, potentially with less advantageous terms. At the same time, entry of the Provisional Relief Order will impose little, if any, hardship on any party. The hearing on the Recognition Order will likely be held in approximately 21 days from the date hereof; thus, the requested provisional relief will only be in place for a limited time and will have little impact on creditors as a whole if, for some reason that is not anticipated, the Court determines not to grant recognition to the Canadian Proceeding. Further, the Provisional Relief Order would not prohibit termination upon the occurrence of any default under the Debtors' contracts other than those specifically enumerated in section 365(e) of the Bankruptcy Code. By contrast, if the provisional relief sought herein is not granted, the Debtors are at material risk of immediate and irreparable harm from automatic termination of certain contracts.

15. Moreover, upon entry of the Recognition Order granting recognition to the Canadian Proceeding as a foreign main proceeding, section 1520 of the Bankruptcy Code would automatically implement, among other provisions, the automatic stay of section 362 of the Bankruptcy Code in the Chapter 15 Cases. Thus, in the event the Recognition Order is entered, the Monitor will automatically be entitled to much of the relief provided for by the Provisional Relief Order. In addition, it is the Monitor's understanding that the Debtors intend to continue

satisfying their obligations in the ordinary course of business, so creditors and contract counter-parties should not be greatly effected by the ongoing proceedings (if at all). Individual creditor's rights to initiate piecemeal collection and enforcement actions in the United States and to terminate contracts or services when the Debtors will be continuing to operate in the ordinary course of business should be afforded minimal weight in light of the Canadian Proceeding, the filing of the Chapter 15 Petitions, and the Monitor's request for entry of the Recognition Order.

16. Lastly, provisional application of sections 362 and 365(e) in these Chapter 15 Cases is in the public interest, as such relief is consistent with relief to which debtors in plenary cases under the Bankruptcy Code are entitled. Such relief will allow for a more efficiently-administered restructuring process to the benefit of all interested parties.

17. Furthermore, provisional relief similar to that requested herein has been granted in numerous chapter 15 cases in both this and other districts. See, e.g., In re Biltrite Rubber (1984) Inc., Case No. 09-31423 (Bankr. N.D. Ohio Mar. 13, 2009) (applying, pursuant to section 1519 of the Bankruptcy Code, section 362 of the Bankruptcy Code on a provisional basis to the actions of all creditors against the petitioners and their property located within the United States); In re KPMG Inc., Foreign Representative of Redcorp Ventures Ltd. and Redfern Resources Ltd., No. 09-12019 (Bankr. W.D. Wa. March 9, 2009) (same); In re MAAX Corporation, No. 08-11443 (Bankr. D. Del. July 14, 2008) (applying, pursuant to section 1519 of the Bankruptcy Code, section 365(e) of the Bankruptcy Code on a provisional basis to protect against contract termination); In re Pro-Fit Holdings Ltd., No. 08-17043, (Bankr. C.D. Cal., July 10, 2008) (applying, pursuant to section 1519 of the Bankruptcy Code, on a provisional basis, sections 361 and 362 of the Bankruptcy Code to the foreign debtor's U.S. assets pending the court's hearing on recognition of the foreign debtor's foreign proceeding); In re Destinator

Technologies, Inc., No. 08-11003 (Bankr. D. Del. May 20, 2008) (granting, pursuant to section 1519 of the Bankruptcy Code, a temporary injunction and application of sections 363 and 364 of the Bankruptcy Code on a provisional basis); In re Madill Equipment Canada, 08-41426 (Bankr. W.D. Wa. April 3, 2008) (incorporating sections 361 and 363 of the Bankruptcy Code on a provisional basis); In re ROL Manufacturing (Canada) Ltd., No. 08-31022 (Bankr. S.D. Ohio March 14, 2008) (granting a temporary injunction pursuant to section 1519 of the Bankruptcy Code).

18. Based on the foregoing, as supplemented by the Memorandum of Law, the Monitor submits that the provisional relief requested herein is appropriate, authorized under the Bankruptcy Code, and in the best interests of the Debtors, their creditors and other parties in interest, and should be granted in full.

## B. The Final Relief Requested Herein is Necessary and Appropriate

### (i) *Recognition of the Canadian Proceeding and Enforcement of the Initial Order on a Final Basis is Appropriate*

19. Chapter 15 of the Bankruptcy Code applies where assistance is sought in the United States by a foreign representative in connection with a foreign proceeding. See 11 U.S.C. § 1501(b)(1). Two of the objectives of chapter 15 of the Bankruptcy Code are the "fair and efficient administration of cross-border insolvencies that protects the interest of all creditors, and other interested entities, including the debtor," and the "protection and maximization of the value of the debtor's assets." 11 U.S.C. §§ 1501(a)(3) and (4). These Chapter 15 Cases have been commenced to obtain the assistance of this Court in the effective and economical administration of the Canadian Proceeding by, among other things, entering the Recognition Order so that relief granted by the Canadian Court will apply with respect to the Debtors' assets in the United States.

20. As set forth more fully in Memorandum of Law, recognition of the Canadian Proceeding as a foreign main proceeding is appropriate because the Monitor has satisfied the requirements of section 1517 of the Bankruptcy Code. Additionally, the Monitor requests that this Court, pursuant to section 1521(a)(6) of the Bankruptcy Code, extend the provisional relief granted on an interim basis in the Provisional Relief Order to final relief applicable in full during the pendency of the Chapter 15 Cases.

21. Section 1517(a) governs the Monitor's request for entry of the Recognition Order. That section provides:

> Subject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if —
>
> (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign non-main proceeding within the meaning of section 1502;
>
> (2) the foreign representative applying for recognition is a person or body; and
>
> (3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a)(emphasis added). The Bankruptcy Code provides further that a foreign proceeding is a "foreign main proceeding" if it is pending in the country where the debtor has its center of main interests. See 11 U.S.C. § 1517(b)(l).

22. Here, the Canadian Proceeding is a foreign main proceeding under the Bankruptcy Code. As described in detail in the First Day Declarations and the Memorandum of Law, Vancouver, British Columbia, Canada is the Debtors' center of main interests. Vancouver is the nerve center of the Debtors' management, business and operations. All of the Debtors' principal corporate, management, banking, and strategic functions are undertaken in Canada, and the Canadian and United States operations are integrated. Indeed, to properly function and operate, the United States Debtors are dependent upon the operations of the Canadian Debtors

and vice-versa, and each group of Debtors would be unable to operate independent of one another.[5] As also set forth in detail in the Memorandum of Law, the Monitor is a properly appointed "foreign representative" pursuant to section 101(24) of the Bankruptcy Code and the Chapter 15 Petitions meet the requirements of section 1515(c) of the Bankruptcy Code. As such, the Bankruptcy Code requirements for recognizing the Canadian Proceeding as a "foreign main proceeding" under the Bankruptcy Code are met.

23. Furthermore, the filing of these Chapter 15 Cases is intended to ensure an orderly administration of the Debtors' financial affairs and recapitalization, under the auspices of the Canadian Proceeding and applicable Canadian law, in a manner that protects the interests of all creditors. Therefore, recognition of the Canadian Proceeding supports and promotes the policies of chapter 15 and the principles of international comity.

24. It is imperative that no ambiguity exists and that the Initial Order applies in full in the Chapter 15 Cases so that the Debtors' United States assets may be administered efficiently and effectively, and that the Debtors' recapitalization may be effectively administered by the Canadian Court, with the assistance of this Court. Accordingly, the Monitor requests, in furtherance of recognition of the Canadian Proceeding, that this Court give full force and effect to the Initial Order of the Canadian Court in the United States.

---

[5] The Canadian Debtors are as follows: (i) 0741693 B.C. Ltd; (ii) Angiotech International Holdings Corp.; and (iii) Angiotech Pharmaceuticals, Inc. The United States Debtors are as follows: (i) Afmedica, Inc.; (ii) American Medical Instruments Holdings, Inc.; (iii) Angiotech America, Inc.; (iv) Angiotech BioCoatings Corp.; (v) Angiotech Delaware, Inc.; (vi) Angiotech Florida Holdings, Inc.; (vii) Angiotech Pharmaceuticals (US), Inc.; (vii) B.G. Sulzle, Inc.; (ix) Manan Medical Products, Inc.; (x) Medical Device Technologies, Inc.; (xi) NeuColl, Inc.; (xii) Quill Medical, Inc.; (xiii) Surgical Specialties Corporation; and (xiv) Surgical Specialties Puerto Rico, Inc.

(ii) *Specific Approval of Relief in Connection with the DIP Facility is Appropriate Under the Circumstances*

25. In addition to recognition of the Canadian Proceeding as a foreign main proceeding and the automatic relief that is triggered thereby pursuant to section 1520 of the Bankruptcy Code,[6] the Monitor requests certain relief pursuant to section 1521 of the Bankruptcy Code to assist in the orderly administration of the Debtors assets. Upon recognition of a foreign proceeding, at the request of a foreign representative, the Court may grant, with certain express exceptions, "any appropriate relief," including any injunctive relief and "any additional relief that may be available to a trustee," provided that the Court determines that doing so is necessary to effectuate the purpose of chapter 15 and to protect the assets of the debtor or the interests of the creditors. See 11 U.S.C. § 1521(a). Thus, pursuant to section 1521(a)(7) of the Bankruptcy Code, the Monitor requests that this Court extend the protections afforded by section 364(e) of the Bankruptcy Code to the Debtors' postpetition credit facility as approved by the Canadian Court in the Initial Order.

26. As set forth more fully in the First Day Declarations, the Debtors have been operating under liquidity constraints for some time. The Debtors have invested heavily in research and development and are struggling to continue to provide marketable products in an increasingly competitive environment. At the same time, the Debtors' operational and debt structures are costly and have contributed to inefficiencies and excessive overhead expenses. The Debtors have commenced the Canadian Proceeding, and the Monitor has commenced the Chapter 15 Cases, in order to restructure the Debtors' outstanding debt obligations and return the

---

6 Upon recognition of the Canadian Proceeding as a foreign main proceeding, certain relief is automatically granted as a matter of right, including a stay that enjoins actions against the Debtors and otherwise protects the Debtors. See 11 U.S.C. § 1520. In particular, upon the Court's recognition of the Canadian Proceeding as a foreign main proceeding, section 1520(a)(l) of the Bankruptcy Code triggers the automatic stay provisions of section 362 of the Bankruptcy Code with respect to the Debtors.

Debtors to a profitable capital structure. In order to properly fund the costs of the Canadian Proceeding and the Chapter 15 Cases, as well as the Debtors' continued operational expenses during the pendency of such proceedings, the Debtors and their advisors have engaged in multi-party negotiations with significant parties in interest and have made a good-faith business decision to enter into an agreement with Wells Fargo Capital Finance, LLC and certain other lenders, pursuant to which the DIP Lender (as defined below) will provide the Debtors with access to a $28 million postpetition credit facility (the "**DIP Facility**").

27. The DIP Lender has agreed to provide the DIP Facility on an exclusive basis subject to a number of terms and conditions, which are set out, in substantially final form (likely to be executed within a day of the date hereof), in that certain Credit Agreement, by and among Angiotech Pharmaceuticals, Inc., as guarantor ("**Parent**"), certain subsidiaries of Parent, as borrowers, certain subsidiaries of Parent, as guarantors, the lenders party thereto (the "**Lenders**") and Wells Fargo Capital Finance, LLC ("**WFCF**"),[7] as the arranger and administrative agent for the Lenders (the "**Draft DIP Credit Agreement**"), a copy of which is attached hereto as Exhibit A. The terms of such financing have been approved by the Canadian Court, in draft form, in the Initial Order. It is anticipated that the final credit agreement with respect to the DIP Facility (the "**DIP Credit Agreement**") will be in substantially the same form as the Draft DIP Credit Agreement. The DIP Credit Agreement will provide (and the Draft DIP Credit Agreement provides) among other things, as follows:[8]

a. the Lenders and WFCF (collectively, the "**DIP Lender**") have agreed to provide a credit facility with borrowing availability as determined in

---

[7] Wells Fargo Capital Finance, LLC was formerly known as Wells Fargo Foothill, LLC and is the Debtors' prepetition working capital lender.

[8] All capitalized terms used in this section shall have the meanings ascribed to them in the DIP Credit Agreement.

accordance with the DIP Credit Agreement in an aggregate amount at any time in U.S. Dollar Loans not to exceed $28 million;

b. all amounts outstanding under the DIP Credit Agreement (including, without limitation, on account of principal, interest, fees and expenses) will be secured by all (and granted a Court-ordered charge over) the assets, property, and undertaking of the Debtors (the "**DIP Lender's Charge**");

c. the DIP Lender may take such steps from time to time as it may deem necessary or appropriate to file, register, record or perfect the DIP Lender's Charge or any of the Definitive Documents;

d. upon the occurrence of an event of default under the Definitive Documents or the DIP Lender's Charge, the DIP Lender, upon five days' notice to the Petitioners and the Monitor, may exercise any and all of its rights and remedies against the Debtors or the Property under or pursuant to the DIP Credit Agreement, Definitive Documents and the DIP Lender's Charge, including without limitation, to cease making advances to the Debtors and set off and/or consolidate any amounts owing by the DIP Lender to the Debtors against the obligations of the Debtors to the DIP Lender under the DIP Credit Agreement, the Definitive Documents or the DIP Lender's Charge, to make demand, accelerate payment and give other notices, or to apply to this Court for the appointment of a receiver, receiver manager or interim receiver, or for a bankruptcy order against the Debtors and for the appointment of a trustee in bankruptcy of the Debtors; and

e. the foregoing rights and remedies of the DIP Lender shall be enforceable against any trustee in bankruptcy, interim receiver, receiver or receiver and manager of the Debtors or the Property.

28. Pursuant to the Initial Order, the charges granted by the Canadian Court shall rank in the following priority:

a. First, the Administration Charge (as defined in the Initial Order) to the maximum amount of $1,500,000;

b. Second, the Directors' Charge (as defined in the Initial Order) to the maximum amount of $1,000,000;

c. Third, the existing liens, charges, security interests or other encumbrances securing the obligations under the Wells Fargo Credit Agreement (as defined in the Initial Order);

d. Fourth, the DIP Lender's Charge;

e. Fifth, the Inter-Company Charges (as defined in the Initial Order), which shall rank *pari passu* with each other;

f. Sixth, the Administration Charge (as defined in the Initial Order) to the maximum amount of $1,000,000; and

g. Seventh, the Directors' Charge (as defined in the Initial Order) to the maximum amount of $1,000,000.

29. The DIP Credit Agreement, as approved in draft form by the Canadian Court, contemplates that all of the Debtors' cash receipts will be used to pay down amounts in satisfaction of prepetition obligations to Wells Fargo Foothill, LLC and the other lenders under the Debtors' prepetition secured credit facility during the pendency of the proceedings until such prepetition obligations are paid in full. Borrowings under the DIP Facility will be used to fund the Debtors' working capital requirements. This structure was a condition of the DIP Lender in agreeing to provide the Debtors with essential postpetition financing.

30. Further, pursuant to the DIP Credit Agreement, certain letters of credit issued pursuant to the prepetition credit facility (the "**Prepetition L/Cs**") will be deemed to have been issued under the DIP Credit Agreement. The Prepetition L/Cs should be deemed to be letters of credit under the DIP Credit Agreement in order to, among other things, permit the Debtors to maintain such obligations as contingent obligations, which maximizes the value of the Debtors' assets and benefits creditors.

31. The Debtors' principal uses of cash during the pendency of the Chapter 15 Cases are anticipated to include the payment of ongoing costs of day-to-day operations, professional fees and disbursements in connection with the Canadian Proceeding. The DIP Lender's position as the Debtors' prepetition secured lender provides it with the experience and familiarity necessary to fulfill the Debtors' postpetition financing needs on a cost-effective and timely basis and on the best available terms.

32. The Monitor and the Debtors believe that the terms of the Draft DIP Credit Agreement, which will be substantially similar to those of the DIP Credit Agreement, are reasonable under the circumstances. The Debtors have not been able to obtain postpetition financing from any lender or group of lenders on more favorable terms than those approved by the Canadian Court. Due to the Debtors' pressing liquidity needs, the Debtors require access to postpetition funding, and the DIP Lender has conditioned availability thereunder upon this Court's approval in full of the Initial Order and its protections granted to the DIP Lender, as well as the grant of protections under section 364(e) of the Bankruptcy Code to the DIP Lender.

33. In addition to section 364(e) protection, the DIP Lender has conditioned the Debtors' access to the DIP Facility upon this Court's recognition and application in full of the Initial Order, including provisions that provide that any obligations incurred as a result of the DIP Facility "do not and will not constitute preferences, fraudulent conveyances or transfers, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law." Initial Order, ¶ 59(c).

34. Accordingly, the Monitor requests that this Court, pursuant to sections 105(a) and 1521(a)(7) of the Bankruptcy Code, afford the DIP Lender with the protections provided for in section 364(e) of the Bankruptcy Code. The Monitor submits that there is cause to grant such relief because without the Court's application of section 364(e) in the Chapter 15 Cases, the DIP Lender will be unwilling to provide access to the DIP Facility. The Debtors' inability to access the DIP Facility would lead to a deterioration of value and could significantly decrease recoveries for the creditors. Furthermore, the relief requested herein is not extraordinary, is consistent with well-established policies underlying the Bankruptcy Code, and is routinely granted to a debtor in possession in a domestic proceeding. Similar postpetition

financing-related relief has also been granted by bankruptcy courts from this district and from other districts in chapter 15 cases. See, e.g., In re Fraser Papers, Inc., *et al.*, Case No. 09-12123 (Bankr. D. Del. July 13, 2009); In re Biltrite Rubber (1984), Inc., et al., Case No. 09-31432 (Bankr. N.D. Ohio Apr. 2, 2009); In re Destinator Techs., Inc., *et al.*, Case No. 08-11003 (Bankr. D. Del. May 20, 2008). The Monitor submits that such relief is similarly appropriate in this instance.

35. Based on the foregoing, the Monitor submits that cause exists, pursuant to section 1521(a)(7) of the Bankruptcy Code, for the Court to apply section 364(e) of the Bankruptcy Code to the DIP Facility, as such treatment is in the best interests of the Debtors and their creditors. See In re Fraser Papers, Inc., *et al.*, Case No. 09-12123 (Bankr. D. Del. July 13, 2009); In re Destinator Techs., Inc., *et al.*, Case No. 08-11003 (Bankr. D. Del. May 20, 2008).

**C. Recognition of the Canadian Proceeding is Consistent with Public Policy**

36. Pursuant to section 1506 of the Bankruptcy Code, even if the requirements for recognition provided in section 1517 of the Bankruptcy Code are satisfied, recognition can nevertheless be denied where it would be "manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. This "public policy" exception has been narrowly construed to apply to only those "matters of fundamental importance to the [United States]." See, e.g., In re Ephedra Prods. Liability Litig., 349 B.R. 333, 336 (S.D.N.Y. 2006) (quoting United Nations General Assembly, Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency, ¶ 89, U.N. Doc. A/CN.9/442 (1997)).

37. Here, nothing regarding the recognition of the Canadian Proceeding contravenes United States public policy. Indeed, the international coordination of the Debtors' restructuring will provide an efficient and fair process to all parties in interest while promoting

comity and cross-border cooperation. Accordingly, section 1506 of the Bankruptcy Code presents no barrier to the entry of either the Provisional Relief Order or the Recognition Order.

38. Moreover, the policy and principles of international comity will be furthered by recognition of the Canadian Proceeding and enforcement of the Initial Order. At paragraph 68 of the Initial Order, the Canadian Court specifically requests the aid and assistance of this Court in giving effect to the Initial Order.

39. Finally, numerous bankruptcy courts in this district have granted relief similar to the general relief requested in this Motion. See, e.g., In re EarthRenew IP Holdings LLC, Case No. 10-13363 (CSS) (Bankr. D. Del. Oct. 22, 2010); In re Grant Forest Products, Case No. 10-11132 (PJW) (Bankr. D. Del. April 19, 2010); In re Fraser Papers, Inc., Case No. 09-12123 (Bankr. D. Del. July 13, 2009); In re Biltrite Rubber (1984), Inc., Case No. 09-31432 (Bankr. N.D. Ohio Apr. 2, 2009); In re Nortel Networks Corporation, Case No. 09-10164 (KG) (Bankr. D. Del. Jan. 14, 2009); In re MAAX Corp., Case No. 08-11443 (CSS) (Bankr. D. Del. July 14, 2008); In re Destinator Technologies Inc., Case No. 08-11003 (CSS) Bankr. D. Del. June 6, 2008). The Monitor submits that such relief is similarly appropriate in this instance.

**NOTICE**

40. The Monitor proposes to notify all creditors of the filing of the Chapter 15 Petitions and the Monitor's request for entry of the Recognition Order in the form and manner set forth in the *Motion for Entry of an Order Specifying Form and Manner of Service of Notice of: (I) Filing of (A) Petitions Pursuant to Chapter 15 of the Bankruptcy Code, and (B) Motion for Provisional and Final Relief In Aid of Canadian Proceeding Pursuant to Sections 105(a), 1517 1519, 1520, and 1521 of the Bankruptcy Code; (II) Entry of Provisional Relief Order; (III) Deadline to Object to Entry of Recognition Order; and (IV) Hearing for Court to Consider*

*Chapter 15 Petitions and Entry of Recognition Order.* In light of the nature of the relief requested herein, the Monitor submits that no other or further notice of this Motion is necessary or required.

## CONCLUSION

WHEREFORE, the Monitor respectfully requests that this Court (a) enter the Provisional Relief Order, substantially in the form attached hereto as Exhibit B, (b) enter the Recognition Order, after notice and a hearing, substantially in the form attached hereto as Exhibit C, and (c) grant any such other and further relief as this Court deems just and proper.

Dated: Wilmington, Delaware
January 30, 2011

ALLEN & OVERY LLP
Ken Coleman
Lisa Kraidin
Jonathan Cho
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

- and -

BUCHANAN INGERSOLL & ROONEY PC
/s/ Mary Caloway
Mary F. Caloway (No. 3059)
Mona A. Parikh (No. 4901)
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295
mary.caloway@bipc.com

*Attorneys to Alvarez and Marsal Canada Inc.,*
*Monitor and Foreign Representative of the Debtors*