# EXHIBIT A

SUPREME COURT
OF BRITISH COLUMBIA
VANCOUVER REGISTRY

JAN 28 2011
ENTERED

No. S-110587
Vancouver Registry

**IN THE SUPREME COURT OF BRITISH COLUMBIA**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36**

**AND**

**IN THE MATTER OF ANGIOTECH PHARMACEUTICALS, INC. AND THE OTHER PETITIONERS LISTED ON SCHEDULE "A"**

**PETITIONERS**

**ORDER**

| | | |
|---|---|---|
| BEFORE THE HONOURABLE | ) | FRIDAY, THE 28th DAY |
| | ) | |
| MR. JUSTICE WALKER | ) | OF JANUARY, 2011 |

THE APPLICATION of the Petitioners coming on for hearing at Vancouver, British Columbia, on the 28th day of January, 2011 (the "**Order Date**"); AND ON HEARING Jeremy Dacks and Marc Wasserman, counsel for the Petitioners and those other counsel listed on Schedule "B" hereto; AND UPON READING the material filed, including the First Affidavit of K. Thomas Bailey sworn January 28, 2011 (the "**Bailey Affidavit**"), the consent of Alvarez & Marsal Canada Inc. to act as Monitor and the Pre-Filing Report of Alvarez & Marsal Canada Inc.; AND UPON BEING ADVISED that the secured creditors who are likely to be affected by the charges created herein were given notice; AND pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985 c. C-36 as amended (the "**CCAA**"), the British Columbia Supreme Court Civil Rules and the inherent jurisdiction of this Honourable Court:

**SERVICE**

1. THIS COURT ORDERS that the time for service of the Petition is hereby abridged and validated so that this Petition is properly returnable today and hereby dispenses with further service thereof.

**JURISDICTION**

2. THIS COURT ORDERS AND DECLARES that the Petitioners are companies to which the CCAA applies.

**PETITION HEARING**

3. THIS COURT ORDERS that the hearing of the Petition in this proceeding be held at the Courthouse at 800 Smithe Street, Vancouver, British Columbia at 10:00 a.m. on Tuesday, the 17th day of February, 2011, provided that the service referred to in paragraph 61 of this Order occur no later than February 2, 2011.

4. THIS COURT ORDERS that all of the relief provided for in the subsequent paragraphs of this Order is granted to the Petitioners on an interim basis only, and that the relief made in the subsequent paragraphs will expire at 11:59 p.m. (local Vancouver time) on February 17, 2011, unless extended by this Court at the hearing of the Petition on that date.

**PLAN OF ARRANGEMENT**

5. THIS COURT ORDERS that the Petitioners, or any one of them, shall have the authority to file and may, subject to further order of this Court, file with this Court a plan of compromise or arrangement (hereinafter referred to as the "**Plan**").

**POSSESSION OF PROPERTY AND OPERATIONS**

6. THIS COURT ORDERS that, subject to this Order and any further Order of this Court, the Petitioners shall remain in possession and control of their current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (the "**Property**"), and continue to carry on their business (the "**Business**") in the ordinary course and in a manner consistent with the preservation of the Business and the Property. The Petitioners shall be authorized and empowered to continue to retain and employ the employees, consultants, agents, experts, accountants, counsel and such other persons (collectively, "**Assistants**") currently retained or employed by them, with liberty to retain such further Assistants as they deem reasonably necessary or desirable in the ordinary course of business or for carrying out the terms of this Order.

7. THIS COURT ORDERS that the Petitioners shall be entitled to continue to utilize the central cash management system currently in place as described in the Bailey Affidavit or, with the consent of the DIP Lender (as defined below), replace it with another substantially similar central cash management system, including any modifications required in connection with the DIP Facility (as defined below) (the "**Cash Management System**"), and that any present or future bank providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Petitioners of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Petitioners, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under the Plan with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System.

8. THIS COURT ORDERS that, subject to the terms and conditions of and availability under the DIP Facility and subject to the applicable cash flow budget approved by the DIP

Lenders pursuant to the DIP Facility and the Consenting Noteholders' Advisors (as hereinafter defined) pursuant to the Recapitalization Support Agreement (each as defined in the Bailey Affidavit) (the "**Cash Flow Budget**"), the Petitioners shall be entitled, but not required, to pay the following expenses whether incurred prior to, on or after the Order Date:

(a) all outstanding wages, salaries, employee and pension benefits (including long and short term disability payments), bonuses (including payments made pursuant to the Annual Bonus Program and Sales Incentive Program, both as defined in the Bailey Affidavit), vacation pay and expenses (but excluding severance pay) payable before or after the Order Date, in each case incurred in the ordinary course of business and consistent with the relevant compensation policies and arrangements existing at the time incurred (collectively "**Wages**");

(b) payments made to employees' Registered Retirement Savings Plans and pursuant to the 401k Program, as defined in the Bailey Affidavit;

(c) the fees and disbursements of any Assistants retained or employed by the Petitioners which are related to the Petitioners' restructuring, at their standard rates and charges, including payment of the fees and disbursements of legal counsel retained by the Petitioners, whenever and wherever incurred, in respect of:

   (i) these proceedings or any other similar proceedings in other jurisdictions in which the Petitioners or any subsidiaries or affiliated companies of the Petitioners are domiciled;

   (ii) any litigation in which the Petitioners are named as party or parties or are otherwise involved, whether commenced before or after the Order Date;

   (iii) services rendered in connection with the registration or maintenance of the Petitioners' worldwide patents, patent-equivalents or other intellectual property; and

   (iv) any related corporate, tax, employee benefit or other similar matters.

(d) with the written consent of the Monitor:

(i) pay the entire amount of their obligations to any creditor if the amount of such obligations, as agreed between the Petitioners and the creditor, is $1,000 or less as at the Order Date;

(ii) pay an amount agreed to by the Petitioners and any other creditor to which the outstanding obligations of the Petitioners are greater than $1,000 as at the Order Date, provided such creditor agrees to accept that amount in full satisfaction of all obligations of the Petitioners to such creditor as at the Order Date;

(iii) pay amounts owing to creditors who hold valid and enforceable possessory or statutory liens against any asset of the Petitioners where the value of such asset exceeds the amount of the possessory or statutory liens or where the asset is deemed critical by the Petitioners and the Monitor to the business operations of the Petitioners; and

(iv) pay amounts outstanding to creditors for goods and services provided prior to the Order Date where expressly authorized by this Order or any further Order of this Court; and

(e) any and all amounts due and owing to American Express (as defined in the Bailey Affidavit) in connection with the employee credit card programs described in the Bailey Affidavit.

8A THIS COURT ORDERS that, for the period commencing on the date of this Order and ending on the date that the DIP Credit Agreement (as defined below) is executed by the parties thereto, all references to the Cash Flow Budget as it pertains to the DIP Lender, shall refer to the Budget as agreed to between the Petitioners and the DIP Lender and shall be subject to the same allowable variances to the Cash Flow Budget that will be included in the DIP Credit Agreement.

9. THIS COURT ORDERS that, notwithstanding any other provision of this Order, and subject to the terms and conditions of and availability under the DIP Facility and subject to the Cash Flow Budget, Angiotech U.S. (as defined in the Bailey Affidavit) are hereby authorized but not required to make payments or otherwise satisfy their obligations to creditors, suppliers, employees, taxing authorities and other persons whether incurred prior to or after the Order Date.

10. THIS COURT ORDERS that, subject to the terms and conditions of and availability under the DIP Facility and subject to the Cash Flow Budget, and except as otherwise provided herein, the Petitioners shall be entitled but not required to pay all expenses reasonably incurred by the Petitioners in carrying on the Business in the ordinary course following the Order Date, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a) all expenses and capital expenditures reasonably incurred and which are necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors' and officers' insurance), maintenance and security services;

(b) all obligations incurred by the Petitioners after the Order Date, including without limitation, with respect to goods and services actually supplied to the Petitioners following the Order Date (including those under purchase orders outstanding at the Order Date but excluding any interest on the Petitioners' obligations incurred prior to the Order Date); and

(c) fees and disbursements of the kind referred to in paragraph 8(b) which may be incurred after the Order Date.

11. THIS COURT ORDERS that the Petitioners are authorized to remit, in accordance with legal requirements, or pay:

(a) any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority in any other jurisdiction which are required to be deducted from Wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan, (iii) Quebec Pension Plan, and (iv) income taxes or any such claims which are to be paid pursuant to Section 6(3) of the CCAA;

(b) all goods and services or other applicable sales and value added taxes (collectively, "**Sales Taxes**") required to be remitted by the Petitioners in connection with the sale of goods and services by the Petitioners, but only where

such Sales Taxes accrue or are collected after the Order Date, or where such Sales Taxes accrued or were collected prior to the Order Date but not required to be remitted until on or after the Order Date; and

(c) any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof, any local, state or federal taxation or other authority in any other jurisdiction in respect of municipal property taxes, municipal business taxes or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors.

12. THIS COURT ORDERS that until such time as a real property lease is disclaimed in accordance with the CCAA, Angiotech Canada (as defined in the Bailey Affidavit) shall pay all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable as rent to the landlord under the lease) based on the terms of existing lease arrangements or as otherwise may be negotiated between Angiotech Canada and the landlord from time to time (“**Rent**”), for the period commencing from and including the Order Date, twice-monthly in equal payments on the first and fifteenth day of the month in advance (but not in arrears). On the date of the first of such payments, any Rent relating to the period commencing from and including Order Date shall also be paid.

13. THIS COURT ORDERS that, except as specifically permitted herein and subject to the Cash Flow Budget and the terms and conditions of the DIP Facility, the Petitioners are hereby directed, until further Order of this Court:

(a) to make no payments of principal, interest thereon or otherwise on account of amounts owing by the Petitioners to any of their creditors as of the Order Date except as authorized by this Order, provided however that the Petitioners are hereby authorized and directed to make all such payments under the Wells Fargo Credit Agreement as required pursuant to the terms of the Definitive Documents (as defined below) and contemplated by the Cash Flow Budget, until paid in full in accordance with the terms of the DIP Facility;

(b) to make no payments in respect of any financing leases which create security interests;

(c) to grant no security interests, trust, mortgages, liens, charges or encumbrances upon or in respect of any of their Property, nor become a guarantor or surety, nor otherwise become liable in any manner with respect to any other person or entity except as authorized by this Order;

(d) to not grant credit except in the ordinary course of the Business only to their customers for goods and services actually supplied to those customers, provided such customers agree that there is no right of set-off in respect of amounts owing for such goods and services against any debt owing by the Petitioners to such customers as of the Order Date; and

(e) to not incur liabilities except in the ordinary course of Business.

14. THIS COURT ORDERS that notwithstanding any other provision in this Order, but subject to the terms and conditions of and availability under the DIP Facility and subject to the Cash Flow Budget, or with the consent of the DIP Lender, the Petitioners are hereby authorized to continue to make scheduled interest payments on their US$325 million senior floating rate notes due 2013 (the "**Floating Rate Notes**") as such payments come due.

**RESTRUCTURING**

15. THIS COURT ORDERS that, subject to such requirements as are imposed by the CCAA and the terms of the Recapitalization Support Agreement and the FRN Support Agreement (as defined in the Bailey Affidavit), and such covenants as may be contained in the Definitive Documents (as hereinafter defined), the Petitioners shall have the right to:

(a) permanently or temporarily cease, downsize or shut down all or any part of their Business or operations and commence marketing efforts in respect of any of their redundant or non-material assets and to dispose of redundant or non-material assets not exceeding $500,000 in any one transaction or $2,000,000 in the aggregate;

(b) terminate the employment of such of their employees or temporarily lay off such of their employees as they deem appropriate;

(c) in accordance with paragraphs 16 and 17, with the prior consent of the Monitor or further Order of the Court, vacate, abandon or quit the whole but not part of any leased premises and/or disclaim any real property lease and any ancillary agreements relating to any leased premises, in accordance with Section 32 of the CCAA, on such terms as may be agreed upon between the Petitioners and such landlord, or failing such agreement, to deal with the consequences thereof in the Plan;

(d) disclaim, in whole or in part, with the prior consent of the Monitor or further Order of the Court, such of their arrangements or agreements of any nature whatsoever with whomsoever, whether oral or written, as the Petitioners deem appropriate, in accordance with Section 32 of the CCAA, with such disclaimers to be on such terms as may be agreed upon between the Petitioners and such counter-parties, or failing such agreement, to deal with the consequences thereof in the Plan; and

(e) pursue all avenues of refinancing for their Business or Property, in whole or part;

all of the foregoing to permit the Petitioners to proceed with an orderly restructuring of the Business (the "**Restructuring**").

16. THIS COURT ORDERS that Angiotech Pharmaceuticals, Inc. ("**ANPI**") may, in accordance with the terms of the lease and on prior notice to the landlord, assign the False Creek Research Park lease to a legal entity affiliated or associated with ANPI (including, without limitation a new entity incorporated by any of the Petitioners), as part of or in connection with the corporate reorganization of ANPI's affairs under the CCAA, and the consequences of the release and discharge of ANPI or any assignor in respect of such assignment shall be dealt with in the Plan.

17. THIS COURT ORDERS that the Petitioners shall provide each of the relevant landlords with notice of the Petitioners' intention to remove any fixtures from any leased premises at least

seven (7) days prior to the date of the intended removal. The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes the Petitioners' entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors who claim a security interest in the fixtures, such landlord and the Petitioners, or by further Order of this Court upon application by the Petitioners, the landlord or the applicable secured creditors on at least two (2) clear days' notice to the other parties. If the Petitioners disclaim the lease governing such leased premises in accordance with Section 32 of the CCAA, they shall not be required to pay Rent under such lease pending resolution of any dispute concerning such fixtures (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer of the lease shall be without prejudice to the Petitioners' claim to the fixtures in dispute.

18. THIS COURT ORDERS that if a notice of disclaimer is delivered pursuant to Section 32 of the CCAA, then: (a) during the period prior to the effective time of the disclaimer, the landlord may show the affected leased premises to prospective tenants during normal business hours on giving the Petitioners and the Monitor 24 hours' prior written notice; and (b) at the effective time of the disclaimer, the landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims the landlord may have against the Petitioners, or any other rights the landlord might have, in respect of such lease or leased premises and the landlord shall be entitled to notify the Petitioners of the basis on which it is taking possession and gain possession of and re-lease such leased premises to any third party or parties on such terms as the landlord considers advisable, provided that nothing herein shall relieve the landlord of its obligation to mitigate any damages claimed in connection therewith.

19. THIS COURT DECLARES that, pursuant to Section 7(3)(c) of the *Personal Information Protection and Electronics Documents Act*, S.C. 2000, c. 5 and Section 18(1)(o) of the *Personal Information Protection Act*, S.B.C. 2003, c. 63, and any regulations promulgated under authority of either Act, as applicable (the "**Relevant Enactment**"), the Petitioners, in the course of these proceedings, are permitted to, and hereby shall, disclose personal information of identifiable individuals in their possession or control to stakeholders, their advisors, prospective investors,

financiers, buyers or strategic partners (collectively, **"Third Parties"**), but only to the extent desirable or required to negotiate and complete the Restructuring or to prepare and implement the Plan or transactions for that purpose; provided that the Third Parties to whom such personal information is disclosed enter into confidentiality agreements with the Petitioners binding them in the same manner and to the same extent with respect to the collection, use and disclosure of that information as if they were an organization as defined under the Relevant Enactment, and limiting the use of such information to the extent desirable or required to negotiate or complete the Restructuring or to prepare and implement the Plan or transactions for that purpose, and attorning to the jurisdiction of this Court for the purposes of that agreement. Upon the completion of the use of personal information for the limited purposes set out herein, the Third Parties shall, upon the request of the Petitioners, return the personal information to the Petitioners or destroy it. If the Third Parties acquire personal information as part of the Restructuring or the preparation and implementation of the Plan or transactions in furtherance thereof, such Third Parties may, subject to this paragraph and any Relevant Enactment, continue to use the personal information in a manner which is in all respects identical to the prior use thereof by the Petitioners.

20. THIS COURT ORDERS that the Petitioners are hereby authorized to (i) take such steps as are required to implement the Recapitalization Transaction (as defined in the Bailey Affidavit) and (ii) comply with the Recapitalization Support Agreement.

21. THIS COURT ORDERS that, notwithstanding any other provision in this Order, the Petitioners are hereby authorized to (i) take such steps as are required to implement the FRN Exchange Offer (as defined in the Bailey Affidavit) and (ii) comply with the FRN Support Agreement.

22. THIS COURT ORDERS that the counterparties to the Recapitalization Support Agreement and the FRN Support Agreement shall be required to obtain the permission of this Court prior to exercising any rights or remedies they may have against the Petitioners under or in respect of the Recapitalization Support Agreement and/or the FRN Support Agreement, other

than in respect of contractual termination rights, which termination rights may be exercised without further permission of this Court.

## STAY OF PROCEEDINGS, RIGHTS AND REMEDIES

23. THIS COURT ORDERS that until and including February 17, 2011, or such later date as this Court may order (the "**Stay Period**"), no action, suit or proceeding in any court or tribunal (each, a "**Proceeding**") against or in respect of the Petitioners or the Monitor, or affecting the Business or the Property, shall be commenced or continued except with the written consent of the Petitioners and the Monitor or with leave of this Court, and any and all Proceedings currently under way against or in respect of the Petitioners or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

24. THIS COURT ORDERS that during the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the Petitioners or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the Petitioners and the Monitor or leave of this Court.

25. THIS COURT ORDERS that, nothing in this Order, including paragraphs 23 and 24, shall: (i) empower the Petitioners to carry on any business which the Petitioners are not lawfully entitled to carry on; (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA; (iii) prevent the filing of any registration to preserve or perfect a mortgage, charge or security interest (subject to the provisions of Section 18.5 of the CCAA relating to the priority of statutory Crown securities); or (iv) prevent the registration or filing of a lien or claim for lien or the commencement of a Proceeding to protect lien or other rights that might otherwise be barred or extinguished by the effluxion of time, provided that no further step shall be taken in respect of such lien, claim for lien or Proceeding except for service of the initiating documentation on the Petitioners.

## NO INTERFERENCE WITH RIGHTS

26. THIS COURT ORDERS that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Petitioners, except with the written consent of the Petitioners and the Monitor or leave of this Court.

## CONTINUATION OF SERVICES

27. THIS COURT ORDERS that during the Stay Period, all Persons having oral or written agreements with the Petitioners or mandates under an enactment for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation services, utility or other services to the Business or the Petitioners, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with, or terminating the supply of such goods or services as may be required by the Petitioners, and that the Petitioners shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the Order Date are paid by the Petitioners in accordance with normal payment practices of the Petitioners or such other practices as may be agreed upon by the supplier or service provider and the Petitioners and the Monitor, or as may be ordered by this Court.

## NON-DEROGATION OF RIGHTS

28. THIS COURT ORDERS that, notwithstanding any provision in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided on or after the Order Date, nor shall any Person be under any obligation to advance or re-advance any monies or otherwise extend any credit to the Petitioners on or after the Order Date. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

## PROCEEDINGS AGAINST DIRECTORS AND OFFICERS

29. THIS COURT ORDERS that during the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against any of the former, current or future directors or officers of the Petitioners with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of the Petitioners whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Petitioners, if one is filed, is sanctioned by this Court or these proceedings under the CCAA are terminated. Nothing in this Order, including in this paragraph, shall prevent the commencement of a Proceeding to preserve any claim against a director or officer of the Petitioners that might otherwise be barred or extinguished by the effluxion of time, provided that no further step shall be taken in respect of such Proceeding except for service of the initiating documentation on the applicable director or officer.

## DIRECTORS AND OFFICERS INDEMNIFICATION AND CHARGE

30. THIS COURT ORDERS that the Petitioners shall indemnify their directors and officers against obligations and liabilities that they may incur as directors or officers of the Petitioners, including the members of the Independent Committee (as defined in the Bailey Affidavit) after the commencement of the within proceedings, except to the extent that, with respect to any director or officer, the obligation or liability was incurred as a result of the director's or officer's gross negligence or wilful misconduct.

31. THIS COURT ORDERS that the directors and officers of the Petitioners shall be entitled to the benefit of and are hereby granted a charge (the "**Directors' Charge**") on the Property, which charge shall not exceed an aggregate amount of $2,000,000, as security for the indemnity provided in paragraph 30 of this Order. The Directors' Charge shall have the priority set out in paragraphs 54 and 56 herein.

32. THIS COURT ORDERS that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Petitioners' directors and officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 30 of this Order.

**APPOINTMENT OF MONITOR**

33. THIS COURT ORDERS that Alvarez & Marsal Canada Inc. is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of the Petitioners with the powers and obligations set out in the CCAA or set forth herein, and that the Petitioners and their shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Petitioners pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

34. THIS COURT ORDERS that the Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

(a) monitor the Petitioners' receipts and disbursements;

(b) report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein;

(c) assist the Petitioners, to the extent required by the Petitioners, in their dissemination to the DIP Lender (as hereinafter defined), its counsel and other advisors and the Consenting Noteholders' Advisors of financial and other information as agreed to between the Petitioners and the DIP Lender or the

holders of the Subordinated Notes that executed the Recapitalization Support Agreement and that are represented by Goodmans LLP (the "**Consenting Noteholders**"), as applicable, which may be used in these proceedings, including reporting on a basis to be agreed with the DIP Lender and as agreed with the Consenting Noteholders;

(d) advise the Petitioners in their preparation of the Petitioners' cash flow statements and reporting required by the DIP Lender and the Consenting Noteholders, which information shall be reviewed with the Monitor and delivered to the DIP Lender, its counsel and other advisors and the Consenting Noteholders' Advisors on a periodic basis as agreed to by the DIP Lender and the Consenting Noteholders, as applicable;

(e) advise the Petitioners in their development of the Plan and any amendments to the Plan and, to the extent required by the Petitioners, in their negotiations with creditors, customers, suppliers and other interested Persons;

(f) assist the Petitioners, to the extent required by the Petitioners, with the holding and administering of creditors' meetings for voting on the Plan;

(g) assist the Petitioners, to the extent required by the Petitioners, in dealing with their respective creditors, customers, suppliers and other interested Persons;

(h) assist the Petitioners, to the extent required by the Petitioners, with their financing and restructuring activities;

(i) have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Petitioners, to the extent that is necessary to adequately assess the Petitioners' business and financial affairs or to perform its duties arising under this Order;

(j) be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order; and

(k) perform such other duties as are required by this Order or by this Court from time to time.

35. THIS COURT ORDERS that the Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, or by inadvertence in relation to the due exercise of powers or performance of duties under this Order, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof, and nothing in this Order shall be construed as resulting in the Monitor being an employer or a successor employer, within the meaning of any statute, regulation or rule of law or equity, for any purpose whatsoever.

36. THIS COURT ORDERS that nothing herein contained shall require or allow the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "**Possession**") of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the *Fisheries Act*, the British Columbia *Environmental Management Act*, the British Columbia *Fish Protection Act* and regulations thereunder (the "**Environmental Legislation**"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation. For greater certainty, the Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

37. THIS COURT ORDERS that the Monitor shall provide any creditor of the Petitioners, the DIP Lender and the Consenting Noteholders' Advisors with information provided by the Petitioners in response to reasonable requests for information made in writing by such creditor or such creditors' advisors addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised by the Petitioners is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Petitioners may agree.

38. THIS COURT ORDERS that, in addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the rights and protections afforded the Monitor by the CCAA or any applicable legislation.

**ADMINISTRATION CHARGE**

39. THIS COURT ORDERS that the Monitor, Canadian and U.S. counsel to the Monitor, Canadian and U.S. counsel and the financial advisor to the Petitioners, counsel and the financial advisor to the Consenting Noteholders (the "**Consenting Noteholders' Advisors**") and counsel and the financial advisor to the Independent Committee shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, by the Petitioners as part of the cost of these proceedings. The Petitioners are hereby authorized and directed to pay the accounts of the Monitor, Canadian and U.S. counsel to the Monitor, Canadian and U.S. counsel and the financial advisor to the Petitioners, the Consenting Noteholders' Advisors and counsel and the financial advisor to the Independent Committee on a periodic basis and, in addition, the Petitioners are hereby authorized to pay to the Monitor, counsel to the Independent Committee, Canadian and U.S. counsel to the Monitor and Canadian and U.S. counsel to the Petitioners retainers collectively in the amount of $1,200,000 to be held by them as security for payment of their respective fees and disbursements outstanding from time to time.

40. THIS COURT ORDERS that the Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the British Columbia Supreme Court and may be heard on a summary basis.

41. THIS COURT ORDERS that the Monitor, Canadian and U.S. counsel to the Monitor, Canadian and U.S. counsel and the financial advisor to the Petitioners, the Consenting Noteholders' Advisors and counsel and the financial advisor to the Independent Committee shall be entitled to the benefit of and are hereby granted a charge (the "**Administration Charge**") on the Property, which charge shall not exceed an aggregate amount of $2,500,000, as security for their respective fees and disbursements incurred at the standard rates and charges of the Monitor and such counsel and advisors, both before and after the making of this Order which are related to the Petitioners' restructuring. For greater certainty, in respect of the fees and disbursements of the financial advisors to the Petitioners and the Consenting Noteholders, the authorization granted in paragraph 39 herein and the scope of the Administration Charge shall refer to and include only obligations relating to monthly work fees and not the payment of any success fees or other bonuses triggered upon implementation of the Recapitalization Transaction or any alternative restructuring transaction. The Administration Charge shall have the priority set out in paragraphs 52 and 54 hereof.

**DIP FINANCING**

42. THIS COURT ORDERS that the Petitioners are hereby authorized and empowered to obtain and borrow under a credit facility (the "**DIP Facility**") from Wells Fargo Capital Finance, LLC, as agent, and as lender, and certain other lenders (collectively, the "**DIP Lender**") in order to finance the Petitioners' working capital requirements and other general corporate purposes, provided that borrowings under such credit facility shall not exceed $28,000,000 unless permitted by further Order of this Court.

43. THIS COURT ORDERS THAT such credit facility shall be on substantially the same terms and subject to the conditions set forth in the draft credit agreement, by and among the

Petitioners and the DIP Lender dated as of January 28, 2011 (the "**DIP Credit Agreement**"), provided to the Court by counsel to the Petitioners, as the terms of such DIP Credit Agreement may be amended by the Petitioners and the DIP Lender with the consent of the Monitor. Such draft credit agreement shall be referred to herein as the "Draft Credit Agreement".

44. THIS COURT ORDERS that the DIP Facility and the DIP Credit Agreement be and are hereby approved.

45. THIS COURT ORDERS that the Petitioners are hereby authorized and empowered to execute and deliver such credit agreements, mortgages, charges, hypothecs and security documents, guarantees and other definitive documents (collectively, the "**Definitive Documents**"), as are contemplated by the DIP Credit Agreement or as may be reasonably required by the DIP Lender pursuant to the terms thereof, and the Petitioners are hereby authorized and directed to pay and perform all of their indebtedness, interest, fees, liabilities and obligations to the DIP Lender under and pursuant to the DIP Credit Agreement and the Definitive Documents, including, but not limited to the fees and expenses of the DIP Lender's Canadian and U.S. counsel, and other advisors, as and when the same become due and are to be performed, notwithstanding any other provision of this Order.

46. THIS COURT ORDERS that the Petitioners shall notify the Consenting Noteholders' Advisors of any borrowings or repayments under the DIP Facility.

47. THIS COURT ORDERS that the DIP Lender shall be entitled to the benefit of and is hereby granted a charge (the "**DIP Lender's Charge**") on the Property in the maximum amount of all Obligations (as that term is defined in the DIP Credit Agreement) outstanding under the DIP Facility at any given time (including, without limitation, on account of principal, interest, fees and expenses) (the "**DIP Obligations**"), which DIP Lender's Charge shall not secure an obligation that exists before this Order is made. For greater certainty, advances made to the Petitioners under the DIP Credit Agreement shall not be used to pay amounts outstanding under the Wells Fargo Credit Agreement. The DIP Lender's Charge shall have the priority set out in paragraphs 54 and 56 hereof.

47A THIS COURT ORDERS that the Petitioners are hereby directed to deposit receipts received after the date of this Order in an amount sufficient to cash collateralize all of the letters of credit issued by Wells Fargo Capital Finance, LLC under the Wells Fargo Credit Agreement in a cash collateral account (the "**Cash Collateral Account**") on terms agreed to between Wells Fargo Capital Finance, LLC and the Petitioners. The Cash Collateral Account shall not form part of the Property and shall be excluded from the Charges (as defined herein).

48. THIS COURT ORDERS that, notwithstanding any other provision of this Order:

(a) the DIP Lender may take such steps from time to time as it may deem necessary or appropriate to file, register, record or perfect the DIP Lender's Charge or any of the Definitive Documents;

(b) the DIP Lender may cease making advances to the Petitioners in accordance with and as provided in the DIP Credit Agreement;

(c) upon the occurrence of an Event of Default under and as defined in the DIP Credit Agreement, or the DIP Lender's Charge or, before the execution of the DIP Credit Agreement the happening of an event that is defined as an Event of Default under the Draft Credit Agreement, the DIP Lender and/or agent and the lenders under the Wells Fargo Credit Agreement, may, upon five (5) days notice to the Petitioners and the Monitor; (i) exercise any and all of its, or their, rights and remedies against the Petitioners or the Property under or pursuant to the Wells Fargo Credit Agreement, the DIP Credit Agreement, the Definitive Documents and the DIP Lender's Charge including without limitation to set-off and/or consolidate any amounts owing to the DIP Lenders and/or the agents and lenders under the Wells Fargo Credit Agreement by the Petitioners against the DIP Obligations, the Definitive Documents, the DIP Lender's Charge or the Obligations under the Wells Fargo Credit Agreement, to make demand, accelerate payment and give notices or to apply to Court for the appointment of a receiver, receiver manager or interim receiver or for a bankruptcy order against the Petitioners and for the appointment of a trustee in bankruptcy of the Petitioners

and; (ii) the DIP Lender, the agent and lenders under the Wells Fargo Credit Agreement shall be entitled to seize and retain proceeds from the sale of Property and the cash flow of the Petitioners to repay amounts owing to the Lenders under the Wells Fargo Credit Agreement and the DIP Lender under the DIP Facility in each case, in accordance with the Definitive Documents and the DIP Lender's Charge, but subject to the priorities as set out in paragraphs 55 and 57 of the Order; and

(d) the foregoing rights and remedies of the DIP Lender and the agent and lenders under the Wells Fargo Credit Agreement shall be enforceable against any trustee in bankruptcy, interim receiver, receiver, or receiver and manager of the Petitioners or the Property.

49. THIS COURT ORDERS AND DECLARES that the DIP Lender, in such capacity, and Wells Fargo Capital Finance, LLC, in its capacity as agent and lender under the Wells Fargo Credit Agreement, shall be treated as unaffected in any plan of arrangement or compromise filed by the Petitioners, or any one of them, under the CCAA, or any proposal filed by the Petitioners under the *Bankruptcy and Insolvency Act* of Canada (the "**BIA**"), with respect to any advances made under and obligations outstanding in respect of the Wells Fargo Credit Agreement and the DIP Obligations outstanding under the Definitive Documents.

49A THIS COURT ORDERS that the Petitioners shall not file a Plan in these proceedings that does not provide for the indefeasible payment in full in cash of the obligations outstanding in respect of the Wells Fargo Credit Agreement and the DIP Obligations outstanding under the Definitive Documents as a pre-condition to the implementation of any such Plan, without the prior written consent of Wells Fargo Capital Finance, LLC and the DIP Lender, as applicable. Subject to paragraph 47(b) herein, the stays of proceedings provided for in this Order shall not apply to Wells Fargo Capital Finance, LLC, the DIP Lender or their respective rights under or in respect of the Wells Fargo Credit Agreement, the DIP Facility or the Definitive Documents, as applicable.

**INTER-COMPANY CHARGES**

50. THIS COURT ORDERS that, subject to the terms of the DIP Facility and the Cash Flow Budgets, (a) Angiotech U.S. are hereby authorized to make advances of funds to Angiotech Canada from time to time in accordance with inter-company transaction practices existing as of the Order Date and (b) Angiotech Canada are hereby authorized to repay funds previously advanced to Angiotech Canada by Angiotech U.S. from time to time in accordance with inter-company transaction practices existing as of the Order Date.

51. THIS COURT ORDERS that, subject to the terms of the DIP Facility and the Cash Flow Budgets, (a) Angiotech Canada are hereby authorized to make advances of funds to Angiotech U.S. from time to time in accordance with inter-company transaction practices existing as of the Order Date and (b) Angiotech U.S. are hereby authorized to repay funds previously advanced to Angiotech U.S. by Angiotech Canada from time to time in accordance with inter-company transaction practices existing as of the Order Date.

52. THIS COURT ORDERS that Angiotech U.S. shall be entitled to the benefits of, and are hereby granted, a charge (the "**U.S. Inter-Company Charge**") on the Property in an amount equal to but not exceeding the aggregate amounts actually outstanding at any given time based on advances made by Angiotech U.S. to Angiotech Canada pursuant to the authorization granted under paragraph 49 herein from and after the Order Date. The U.S. Inter-Company Charge shall have the priority set out in paragraphs 54 and 56 hereof.

53. THIS COURT ORDERS that Angiotech Canada shall be entitled to the benefits of, and are hereby granted, a charge (the "**Canada Inter-Company Charge**") on the Property in an amount equal to but not exceeding the aggregate amounts actually outstanding at any given time based on advances made by Angiotech Canada to Angiotech U.S. pursuant to the authorization granted under paragraph 50 herein from and after the Order Date. The Canada Inter-Company Charge shall have the priority set out in paragraphs 54 and 56 hereof. The U.S. Inter-Company Charge and the Canada Inter-Company Charge are collectively referred to herein as the Inter-Company Charges.

54. THIS COURT ORDERS that the DIP Lender shall be entitled to the benefits of the Inter-Company Charges to the maximum amount of the DIP Obligations outstanding at any given time and such assignment shall remain in effect only until such time as the DIP Obligations are repaid and satisfied in full and the DIP Lender's Charge has been discharged.

**VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER**

55. THIS COURT ORDERS that the priorities of the Administration Charge, the Directors' Charge, the Inter-Company Charges and the DIP Lender's Charge, as among them, shall be as follows:

First – Administration Charge (to the maximum amount of $1,500,000);

Second – Directors' Charge (to the maximum amount of $1,000,000);

Third – Any existing liens, charges, security interests or other encumbrances securing the obligations under the Wells Fargo Credit Agreement;

Fourth - DIP Lender's Charge;

Fifth – Inter-Company Charges, which shall rank *pari passu* with each other;

Sixth – Administration Charge (to the maximum amount of $1,000,000); and

Seventh – Director's Charge (to the maximum amount of $1,000,000).

56. THIS COURT ORDERS that the filing, registration or perfection of the Administration Charge, the DIP Lender's Charge, the Inter-Company Charges and the Directors' Charge (collectively, the "**Charges**") shall not be required, and that the Charges shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered or perfected subsequent to the Charges coming into existence, notwithstanding any failure to file, register or perfect any such Charges.

57. THIS COURT ORDERS that each of the Administration Charge, the DIP Lender's Charge, the Inter-Company Charges and the Directors' Charge (all as constituted and defined

herein) shall constitute a charge on the Property and such Charges shall rank in priority to all other security interests, trusts, liens, mortgages, charges and encumbrances and claims of secured creditors, statutory or otherwise (collectively, "**Encumbrances**"), in favour of any Person, notwithstanding the order of perfection or attachment, except for any validly perfected purchase money security interest in favour of a secured creditor or any valid statutory Encumbrance existing on the date of this Order in favour of any Person that is a Secured Creditor (as defined in the CCAA) in respect of any of source deductions from wages, employer health tax, workers compensation, vacation pay and banked overtime for employees, amounts under the Wage Earners Protection Program that are subject to a super priority claim under the BIA.

58. THIS COURT ORDERS that except as otherwise expressly provided herein, or as may be approved by this Court, the Petitioners shall not grant any Encumbrances over any Property that rank in priority to, or *pari passu* with the Charges, unless the Petitioners obtain the prior written consent of the Monitor, the DIP Lender and the beneficiaries of the Administration Charge, the Inter-Company Charges and the Director's Charge.

59. THIS COURT ORDERS that the Administration Charge, the Director's Charge, the Inter-Company Charges, the DIP Credit Agreement, the Definitive Documents and the DIP Lender's Charge shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the "**Chargees**") and/or the DIP Lender shall not otherwise be limited or impaired in any way by (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to the BIA, or any bankruptcy order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; or (d) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, mortgage, security agreement, debenture, sublease, offer to lease or other agreement (collectively, an "**Agreement**") which binds the Petitioners; and notwithstanding any provision to the contrary in any Agreement:

(a) neither the creation of the Charges nor the execution, delivery, perfection, registration or performance of the DIP Credit Agreement, the Definitive Documents, the Recapitalization Support Agreement or the FRN Support Agreement shall create or be deemed to constitute a breach by the Petitioners of any Agreement to which it is a party;

(b) none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the Petitioners entering into the DIP Credit Agreement, the creation of the Charges, or the execution, delivery or performance of the Definitive Documents; and

(c) the payments made and the incurrence and performance of obligations by the Petitioners pursuant to this Order, the DIP Credit Agreement, the Definitive Documents, the Recapitalization Support Agreement or the FRN Support Agreement, and the granting of the Charges, including the payments referred to in paragraph 13(a) herein, do not and will not constitute preferences, fraudulent conveyances or transfers, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

60. THIS COURT ORDERS that any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Petitioners' interest in such real property leases.

**SERVICE AND NOTICE**

61. THIS COURT ORDERS that the Monitor shall (i) without delay, publish in *The Globe and Mail* and *The Wall Street Journal* a notice containing the information prescribed under the CCAA, (ii) within five days after Order Date, (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, in the prescribed manner, a notice to every known creditor who has a claim against the Petitioners of more than $1,000, and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a)

of the CCAA and the regulations made thereunder, provided that, for the purposes of this list, (i) with respect to the Subordinated Notes and the Floating Rate Notes, only the name and address of the indenture trustee of such notes and the aggregate amount owing in respect of such notes shall be listed and made publicly available and (ii) the Monitor shall not make the names and addresses of individuals who are creditors publicly available.

62. THIS COURT ORDERS that the Petitioners and the Monitor are at liberty to serve this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or electronic transmission to the Petitioners' creditors or other interested parties at their respective addresses as last shown on the records of the Petitioners and that any such service or notice by courier, personal delivery or electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

63. THIS COURT ORDERS that the Monitor shall maintain a list (the "**Service List**") of all parties, including emails and other contact information of such parties, that have appeared in these proceedings or have in writing requested that the Monitor add them to the Service List. The Monitor shall post the Service List on its website at: www.alvarezandmarsal.com/angiotech.

64. THIS COURT ORDERS that any party to these proceedings may serve any court materials in these proceedings by emailing a PDF or other electronic copy of such materials to counsels' email addresses as recorded on the Service List from time to time, and the Monitor may post a copy of any or all such materials on its website at: www.alvarezandmarsal.com/angiotech.

65. THIS COURT ORDERS that notwithstanding paragraphs 62 and 64 of this Order, service of the Petition, the Notice of Hearing of Petition, the Affidavit #1 of K. Thomas Bailey, this Order and any other pleadings in this proceeding (collectively, the "**Materials**"), shall be made on the federal and British Columbia Crowns in accordance with the *Crown Liability and Proceedings Act*, R.S.C. 1985, c. C-50, and regulations thereto, in respect of the federal Crown, and the *Crown Proceeding Act*, R.S.B.C. 1996, c. 89, in respect of the British Columbia Crown.

**GENERAL**

66. THIS COURT ORDERS that the Petitioners or the Monitor may from time to time apply to this Court for advice and directions in the discharge of its powers and duties hereunder.

67. THIS COURT ORDERS that nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Petitioners, the Business or the Property.

68. THIS COURT REQUESTS the aid and recognition of other Canadian and foreign Courts, tribunal, regulatory or administrative bodies, including any Court or administrative tribunal of any Federal or State Court or administrative body in the United States of America, including the United States Bankruptcy Court for the District of Delaware, to act in aid of and to be complementary to this Court in carrying out the terms of this Order where required. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Petitioners and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Petitioners and the Monitor and their respective agents in carrying out the terms of this Order.

69. THIS COURT ORDERS that each of the Petitioners and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order and the Monitor is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada.

70. THIS COURT ORDERS that the Monitor is hereby directed, as a foreign representative of the Petitioners to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the *United States Bankruptcy Code*, 11 U.S.C. §§ 101-1330, as amended.

71. THIS COURT ORDERS that the Petitioners may (subject to the provisions of the CCAA and the BIA) at any time file a voluntary assignment in bankruptcy or a proposal pursuant to the commercial reorganization provisions of the BIA if and when the Petitioners determine that such a filing is appropriate.

72. THIS COURT ORDERS that the time limited for filing and serving a Response to the Petition along with any affidavit material upon which the Person filing such Response intends to rely shall, for Persons in Canada, be 14 days from the date of service of the Materials upon such Person, and, for persons outside Canada, be 21 days from the date of service of the Materials upon such Person.

73. THIS COURT ORDERS that the Petitioners are hereby at liberty to apply for such further interim or interlocutory relief as it deems advisable within the time limited for Persons to file and serve Responses to the Petition.

74. THIS COURT ORDERS that short leave is hereby granted to allow the hearing of any Notice of Application filed in these proceedings on two (2) clear days' notice after delivery of such Notice of Application and all affidavits in support, subject to the Court in its discretion further abridging or extending the time for service.

75. THIS COURT ORDERS that any interested party (including the Petitioners and the Monitor) may apply to this Court to vary or amend this Order on not less than seven (7) days' notice to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

76. THIS COURT ORDERS that endorsement of this Order by counsel appearing on this application, other than counsel for the Petitioners, is hereby dispensed with.

77. THIS COURT ORDERS that this Order and all of its provisions are effective as of 12:01 a.m. local Vancouver time on the Order Date.

BY THE COURT

~~DISTRICT~~ REGISTRAR

APPROVED AS TO FORM:

Counsel for the Petitioners

## Schedule "A"

1. 0741693 B.C. Ltd.
2. Angiotech International Holdings, Corp.
3. Angiotech Pharmaceuticals (US), Inc.
4. American Medical Instruments Holdings, Inc.
5. NeuColl, Inc.
6. Angiotech BioCoatings Corp.
7. Afmedica, Inc.
8. Quill Medical, Inc.
9. Angiotech America, Inc.
10. Angiotech Florida Holdings, Inc.
11. B.G. Sulzle, Inc.
12. Surgical Specialties Corporation
13. Angiotech Delaware, Inc.
14. Medical Device Technologies, Inc.
15. Manan Medical Products, Inc.
16. Surgical Specialties Puerto Rico, Inc.

## Schedule "B"

| Counsel | Appearance |
|---|---|
| Osler, Hoskin & Harcourt LLP<br>100 King Street West<br>Toronto, Ontario<br><br>**Jeremy Dacks**<br>**Marc Wasserman**<br><br>Farris, Vaughan, Wills & Murphy LLP<br>Suite 2500, 700 West Georgia Street<br>Vancouver, B.C.<br><br>**Rebecca Morse** | *Counsel for Petitioners* |
| Goodmans LLP<br>Suite 3400, 333 Bay Street<br>Toronto, Ontario<br><br>**Rob Chadwick**<br>**Logan Willis** | *Counsel for Consenting Noteholders* |
| Fasken Martineau DuMoulin LLP<br>Suite 2900, 550 Burrard Street<br>Vancouver, B.C.<br><br>**John Grieve** | *Counsel for Alvarez & Marsal Canada Inc., the Monitor* |
| Stikeman Elliott LLP<br>Suite 1700, 666 Burrard Street<br>Vancouver, B.C.<br><br>**Maria Konyuckhova** | *Counsel for Independent Committee* |

| **Counsel** | **Appearance** |
|---|---|
| Blake, Cassels & Graydon LLP<br>Suite 2600, 595 Burrard Street<br>Vancouver, B.C.<br><br>**Bill Kaplan, Q.C.**<br>**Peter Rubin** | *Counsel for Wells Fargo* |